17   492
68   588

## OWEN *against* DIXON.

Where *A* made a fraudulent conveyance to *B*, and afterwards, *A* authorized *C*, as his agent, to take the property so conveyed and sell it ; it was held, that such conveyance, though fraudulent, was valid as against *A ;* and as *A* could confer no greater power upon *C* than he possessed himself, *C* had no right or title to the property as against *B*.

Where property has been fraudulently conveyed, the rights of a creditor of the vendor, as such, with respect to the property, are not affected by such conveyance; but he may, notwithstanding the conveyance, avail himself of all the remedies of collecting his debt out of the property, which the law has provided for creditors; and in pursuing those remedies, he may treat the property as still the property of the vendor.

But a creditor of a fraudulent vendor, in obtaining satisfaction of his debt out of the property conveyed, must pursue the course prescribed by law; and if he seize the property and appropriate it, without pursuing such course, the proceedings are wrongful, and he thereby makes himself liable as a wrong-doer.

The process by which a creditor may lawfully take property fraudulently conveyed to another, out of the possession of the vendee, is an attachment or execution ; and in either case, all the subsequent steps prescribed by law, must be taken, and if any of them are omitted, the property is discharged from the lien created by the attachment or execution, and must be restored to the owner.

Therefore, where *C*, a creditor of *A*, the fraudulent vendor, attached the property in the possession of *B*, the vendee, but before judgment, *C* abandoned his process, and sold the property, by virtue of authority from *A*, and applied the avails in payment of his debt ; in trover, brought by *B* against *C*, it was held, that *C* was liable.

THIS was an action of trover, for two wagons, a horse and a harness; tried at *Hartford, September* term 1845, before *Hinman*, J.

*Hartford,*
June, 1846.

Owen
*v.*
Dixon.

On the trial of the cause, on the general issue, the plaintiff claimed title to the property mentioned in the declaration, as executor of the last will and testament of *William Wilkins,* deceased. The property had been owned by *Lyman Johnson,* who had conveyed and delivered it to *Wilkins,* in his lifetime. It remained in the possession of *Wilkins* until his death; and immediately thereafter, the plaintiff, as his executor, took it into his possession, caused it to be inventoried as part of *Wilkins'* estate, and continued in the possession of it, until it was attached and taken from him.

On the 12th of *March* 1840, while this property was in the plaintiff's possession, the defendant caused it to be attached, by virtue of three writs of attachment, two in his favour, and one in favour of *Wilmarth Phillips,* against *Lyman Johnson,* as whose property the defendant directed the officer to attach it. After the property was attached, the officer took it out of the possession of the plaintiff, and delivered it into the hands of the defendant. In a short time afterwards, the defendant, without any authority derived from the plaintiff, but by virtue of authority derived from *Johnson,* sold the property. The authority given by *Johnson* was contained in the following writing : " Whereas three suits have been brought against me, returnable to the county court to be holden at *Hartford,* within and for the county of *Hartford,* on the fourth *Tuesday* of *March* 1840, one in favour of *James Dixon,* one in favour of *James Dixon,* executor of *William Dixon,* and one in favour of *Wilmarth Phillips,* and a grey mare, one buggy and one harness have been attached on the same, as my property; now therefore, I do hereby authorize and empower said *Dixon* to sell said property, and devote the proceeds to the payment of the amount due on said claims; and I further agree, that said suits may be defaulted, on the first day of said term, and judgments rendered on the same for the amount justly due. *Hartford, March* 18, 1840. *Lyman Johnson.*" The writs were duly returned to court, and continued until *November,* 1842, when they were, some time before the commencement of this suit, withdrawn, by the present defendant, and no judgment was rendered in either of them.

The defendant claimed to have proved, that the conveyance by *Johnson* to *Wilkins* was not made in good faith, but was fraudulent and void as to *Johnson's* creditors, and that he, the defendant, sold the property, by virtue of authority derived from *Johnson*, while it was in his, the defendant's hands; and that by an arrangement between *Johnson* and the defendant, after the sale of the property, the proceeds had been applied in payment of the debts for which it had been attached, and the suits withdrawn.

The plaintiff claimed, that the conveyance to *Wilkins* was made and received in good faith, and was not fraudulent; and he denied, that the defendant had any authority under *Johnson*, to sell or appropriate the avails of the property. The plaintiff also claimed, and introduced evidence to prove, that if the conveyance to *Wilkins* was fraudulent before the attachments, the title thereto had been perfected in him, the plaintiff, as such executor, and freed from any taint of fraud, by means of a submission to arbitration, by him and *Johnson*, of mutual claims and matters in difference between the estate of *Wilkins* and *Johnson*, and the award thereon, and the performance of that award. The plaintiff also claimed, as matter of law, and requested the court so to instruct the jury, that even if the conveyance to *Wilkins* was fraudulent, as claimed by the defendant, and the title thereto had not been freed from the taint of such fraud, yet inasmuch as after the property had been attached, it had been sold by the defendant, by virtue of no legal process, and the defendant had abandoned his attachments on the property, and had not proceeded under them, he could not justify the taking of the property against the plaintiff, either under the attachments, or under any authority derived from *Johnson*, or under the attachments and *Johnson's* authority combined.

The defendant claimed, that he could so justify the taking of the property, and requested the court so to charge the jury.

The court charged the jury in conformity with the claim of the plaintiff, and contrary to that of the defendant.

The jury returned a verdict for the plaintiff; and thereupon the defendant moved for a new trial for a misdirection.

*T. C. Perkins,* in support of the motion, contended, 1. That

Hartford,
June, 1846.

Owen
*v.*
Dixon.

the plaintiff, being the representative of a *fraudulent grantee*, claims under a title, which, as against the defendant, a *bona fide* creditor of the fraudulent grantor, is " utterly void." *Stat.* 300. *tit.* 40. (ed. 1838.) In the judgment of the law, he has *no estate. Rob. Fr. Conv.* 520. *Sands* v. *Codwise,* 4 *Johns. R.* 536. 598.

2. That under these circumstances, the plaintiff will not be heard to say, that the defendant has not taken the proper steps to avoid his title. *High* v. *Wilson,* 2 *Johns. R.* 46. *Martyn* v. *Podger,* 5 *Burr.* 2631.

3. That this claim will not avail the plaintiff, even if he is permitted to make it ; the arrangement between the defendant and *Johnson* being perfectly legal, and equivalent to a sale of the property on execution.

4. That if the defendant cannot claim as attaching creditor, still, by virtue of his attachments, and the subsequent arrangement, taken together, he will be deemed a *bona fide* grantee or purchaser ; and it is well settled, that such a grantee or purchaser will hold against a fraudulent grantee. *Kimball* v. *Hutchins,* 3 *Conn. R.* 450. *Preston* v. *Crofut,* 1 *Conn. R.* 527. 539. 541. *in notis.* 1 *Sw. Dig.* 284.

5. That a conveyance by a fraudulent grantee, to a creditor of the grantor, purges the fraud. *Crowninshield* v. *Kittridge,* 7 *Metc.* 520. *Thomas* v. *Goodwin,* 12 *Mass. R.* 140. *Hutchins* v. *Sprague,* 4 *N. Hamp. R.* 469. The law is satisfied if the property comes into the hands of creditors, whether by attachment and levy of execution, or by conveyance from the fraudulent grantor, or from the fraudulent grantee.

*Hungerford* and *Cone,* contra, contended, 1. That the effect of the fraudulent conveyance to *Wilkins,* was, to clothe him with the title ; and this title, as to all the world except the creditors of *Johnson,* was good. *Stat.* 300. (ed. 1838.) *Chapin* v. *Pease,* 10 *Conn. R.* 69. *Hastings* v. *Belknap,* 1 *Denio* 190.

2. That the act of taking the property from the plaintiff, was an unlawful act, unless a justification be shown. In the first place, if a mere stranger should, without authority, take away property in the possession of another, it is clear that an action would lie against him. A possessory title is good, as against a stranger. Secondly, this is not a case where a party may

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

Owen
*v.*
Dixon.

take the matter of redressing himself into his own hands. The defendant could not do this, even against *Johnson* himself. Nor is it a case for distress, or of recaption, or any thing of that kind.

3. That the defendant has shown no justification. In the first place, *legal process* is necessary to justify the taking, as against the fraudulent grantee : otherwise, a party may take the property, and appropriate it to suit himself towards the claims of creditors, and no one could have an action against him ; not the grantor, because he has no interest ; nor the grantee, because he has no title as against the creditor. Secondly, the attachments would not constitute legal process, and could have no effect as a justification, *unless pursued. Osborne* v. *Moss,* 7 *Johns. R.* 161. *Pierce* v. *Benjamin,* 14 *Pick.* 356. 360. Thirdly, the consent or authority of *Johnson,* that the defendant might sell and appropriate the property, cannot be a justification, as it respects the plaintiff ; because *Johnson* could not agree away the rights of others.

4. That allowing that the contract was fraudulent, and that the creditors might treat it as a nullity, still it can be so treated only in the regular course of legal proceeding. In the first place, the plaintiff was interested, and had a right to have the property sold in the manner provided by law. Secondly, he was entitled to the *surplus,* in all events. Thirdly, by the sale, he is deprived of the power of replevying the property, which the law gives him a right to do.

5. That if *Johnson* himself could sell to a *bona fide* purchaser, still he could not authorize the defendant to sell and appropriate the property.

STORRS, J. It is conceded, that the disposal which was made by the defendant of the property mentioned in the declaration, was a conversion of it : the question is, whether that conversion was wrongful.

The plaintiff's possession of the property constitutes a good title to it as against a wrong-doer ; that is, a person who could not show a superior right. *Johnson,* the former owner of the property, had conveyed it to the plaintiff ; and that conveyance, although fraudulent as to the creditors of *Johnson,* was clearly valid to all intents and purposes, as between him and the plaintiff. He was estopped from disputing the valid-

*Hartford,*
June, 1846.
———
Owen
*v.*
Dixon.

ity of his own conveyance. It was equally valid as between the plaintiff and any person acting by the authority of *Johnson*, as his agent; because *Johnson* could confer no greater power upon his agent than he possessed himself. Consequently, neither *Johnson*, nor any one so acting by his authority, had any right or title to the property as against the plaintiff. Any justification, therefore, which the defendant sets up in relation to this property, under an authority derived from *Johnson*, as his agent, must fail.

The counsel for the defendant endeavoured to place him in the relation of a purchaser of the property from *Johnson*, subsequently to the conveyance from the latter to the plaintiff; and have insisted, that a title was acquired, by such purchase, as against such prior conveyance. If the defendant were a purchaser, the case would present the question, (at least, as to personal property,) whether a fraudulent grant would prevail as between the grantee and a subsequent purchaser. This question would not be free from difficulty. But we consider it unnecessary to investigate it, because, on the case presented in the motion, there is no colour for the claim that there was any purchase from *Johnson*, by the defendant. It appears explicitly, that the defendant sold the property, and applied the avails to the debts on which it had been attached, only by virtue of an authority for that purpose given by *Johnson*. In thus disposing of it, the defendant acted merely as the agent of *Johnson*, and not by virtue of any controul which he had acquired over it as owner, by having purchased it from him. And the writing under which he acted, shows conclusively, that he derived from *Johnson* no title or interest in the property whatever. Nor did the defendant profess to act on his own behalf in disposing of it, as he must have done, if it had been transferred to him. And it moreover appears, that he claimed, on the trial, that he acted, not under any title acquired by himself, but only under that of *Johnson*, and as his agent. The defence, therefore, founded on the claim that the defendant was purchaser of the property, fails.

It appears, however, that the defendant was a creditor of *Johnson*; and the next question is, whether he was protected against this action, on that ground. It is a familiar principle, that a fraudulent conveyance of property is void, as to the creditors of the vendor. By this is meant, that the rights of a

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

Owen
*v.*
Dixon.

creditor, as such, are not, with respect to the property, affect-ed by such conveyance ; but that he may, notwithstanding the conveyance, avail himself of all the remedies for collecting his debt out of the property or its avails, which the law has provided in favour of creditors; and that in pursuing those remedies, he may treat the property as though such convey-ance had not been made, that is, as the property of the fraud-ulent vendor.   The conveyance is ineffectual to shield the property in the hands of the vendee, from the just claims of the creditors of the vendor, when those claims are prosecuted against it, in the manner pointed out by law.   Not that a cred-itor may seize it, without any legal process, in the hands of the fraudulent vendee, and appropriate it of his own head to the payment of the debt due by the vendor : neither the gen-eral principles of law, nor the particular laws which are enact-ed for the collection of debts, confer any such right on the creditor.   He may cause it to be appropriated to the payment of his debt ; but he can do this only in the mode which the law prescribes ; and if he departs from that mode, his pro-ceedings are unauthorized by law, and therefore wrongful ; and he thereby makes himself liable as a wrong-doer to the owner of the property, who, where there has been no convey-ance, is the debtor, and where there has been a fraudulent one, is the vendee, because such vendee's title is good against the vendor, and also against all others, including the creditors of the vendor, who do not protect themselves against him, by pursuing that prescribed course, by which alone the property can be made available to creditors.   A creditor at large, as it is termed, cannot impeach the conveyance, but only a creditor having some process, on which the property may be lawfully seized, and by which it is made liable, either immediately or ultimately, to be appropriated in satisfaction of his debt.   Such process, by our law, is an attachment or execution, to one of which it is necessary for a creditor to resort, and to either of which he may resort, in order to avail himself of the property thus fraudulently transferred.   Without such process, he has no right to meddle with the property ; and if he should do so, he would be liable to all the consequences of an unlawful interference with it, equally with any other person who was not a creditor.   After the property is seized on an attach-ment or execution, it is further necessary that all the subse-

*Hartford,*
June, 1846.

Owen
*v.*
Dixon.

quent steps prescribed by law should be taken with it. In the case of an attachment, the creditor must pursue the action in which the property was attached, to judgment and execution; and the latter must be in the manner pointed out by law. If any of these steps are omitted, the property is discharged from the lien created by the attachment or execution, and must be restored to the owner. That owner, in the present case, would be the plaintiff. *Stat.* 247. *tit.* 40. *s.* 1. *Jordan* v. *Gallup,* 16 *Conn. R.* 536. *Chapin* v. *Pease,* 10 *Conn. R.* 69. 73. *Noble* v. *Holmes,* 5 *Hill,* 194. *Benton* v. *Jones,* 8 *Conn. R.* 186. *Drinkwater* v. *Drinkwater,* 4 *Mass. R.* 354. *Parker* v. *Proctor,* 9 *Mass. R.* 390. *Reade* v. *Livingston,* 3 *Johns. Ch. R.* 500. 4 *Munf.* 368. 2 *Munf.* 384. 2 *Hill* 181. 15 *Mass. R.* 414. 490.

These principles, which have never, to our knowledge, been questioned, settle the point now before us. The defendant did not pursue his suit on which the property in question was attached. The attachment, therefore, was abandoned, and the lien acquired by it, lost: and it became the duty of the defendant to cause it to be restored to the plaintiff, from whom it was taken. As to what was subsequently done by the defendant with it, it was done only by the authority and as the agent of *Johnson ;* and, as has been shown, he had no right to controul the property.

Therefore, a new trial is not advised.

In this opinion the other Judges concurred.

New trial not to be granted.