Warden, J.
No member of the court is disposed to question the ruling in 20 Ohio, on the facts as they then stood before the-court in this same case. Our predecessors held that the joint agreement of Garnier and Bour with one of Garnier’s creditors might give such creditor a valid security without resort to legal process; and when some words used by Caldwell J. (beginning at the last paragraph on p. 399 of 20 Ohio), are compared with the second division of the syllabus (20, 389), it will appear that, as remarked by the district court, the late court in bank laid “ some stress upon Garnier’s supposed assent to the mortgage.” And in such a case as the testimony then disclosed, and even upon the other facts, as they now appear, some stress might well be laid on such a fact, if it existed; not, however, as a thing essential to the soundness, or in other words the operativeness, of the mortgage, but as additional evidence of its good faith. When regarded, however, as connected with or entering into the conveyance itself, it seems to the majority of this court a thing of the slightest possible significance, and we are unable to assign to it any important relation to the transaction, or legal effect in its consummation.
What powers, for lawful purposes, are given to a fraudulent vendee over the goods sold to him? The “ null and’void” conveyance is, notwithstanding the strong words of *the statute, [254 such only in some respects and for some purposes. We shall see that, after all, the limits which any sale (however fraudulent as to third persons) is absolutely null and void, are somewhat confined ; and that such a sale may, even as to such third persons, leave substantial powers, for lawful purposes, in the hands of the vendee.
It is claimed that the vendor can not be heard if he attempt, for his own benefit, in any manner or degree, to deny his sale. As .to his rights or interests, the law seals his lips against all question of *255 the sale he has fraudulently made. Before our statute, his very administrator, representing, as he does, creditors as well as heirs, could not have justified a seizure of the goods from the vendee, but would have been compelled to give them up, or pay their value to the vendee, as ho should bring his action. To this point may be cited Osborn v. Moss, 7 Johns. 161. In that case the defendant justified, as administrator of Hodges, the taking of a pair of oxen and two cows which were, as he said, fraudulently obtained by the plaintiff under a judgment, execution, and sale, produced and procured by covin and fraud between the plaintiff and Hodges, to cheat the creditors of the intestate; and this fact was admitted by demurrer. The court said: “ The case of Hawes v. Leader (Cro. Jac. 270, Yelv. 196) is an answer to this defense, and completely destroys it. In that case, the intestate made a grant of his goods to B, by fraud between him and B, to cheat the creditors, and he kept possession of the goods and died. B then sued the administrator for the goods, and he pleaded this covin and fraud, and the statute of 13 Eliz., which declares all such gifts and grants void as against creditors; but, on demurrer, the plea was held bad, and judgment was rendered for the plaintiff on the ground, among others, that the deed was void only as against, creditors, but that it remained good as against the party himself, and his executors and administrators. This ground of the decision is mentioned by Yelverton in his report of the case with quod nota; and he was counsel for defendant, and his reports are among the best of the 255] old authorities.” The *court continued: “ The defendant further sets up in his defense that he was a creditor as well as administrator of the intestate. It does not, however, alter the case. As creditor, he had no right to take the goods without suit. He was still a trespasser, and in his character of administrator he could not attack the judgment on the ground of fraud. His remedy, as- creditor, would have been to have sued the plaintiff for his debt, and charged him as executor de son tort."
The administrator may, under our law, impeach the fraudulent sale of his intestate; but the vendor himself is, and ought to be, as much incapacitated as ever to set aside his sale, as between him and his vendee. As, however, his administrator, to save the right of creditors, may avoid his fraudulent sale, it may be contended, that the vendor in his lifetime, should have the same power. But to allow it, would open the door to fraud, and reverse the rule of *256 policy -which does, and ought to prevail in this respect. The creditor may well, directly, or through an administrator, who is to that extent, his agent or representative, be allowed rights which the conveyance of the vendor should estop the latter from asserting. And, with all possible respect for the holders of an opposite opinion, it does appear to us, that the addition to the legal power of the vendee to convey as he pleases his own property, which would be furnished by the particular assent of the vendor, is too insubstantial, too shadowy, to be regarded for a moment. As between fraudulent vendor and fraudulent vendee, the power of the vendee to convey needs no recognition or addition whatever; and his right to do so in favor of a bona fide creditor, would seem, as between all parties to the transaction, to be wholly unquestionable. In every such case, the only material question would seem to relate to the reality and good faith of the debt paid or secured; and, as already intimated, “ some stress ” might well be laid upon the assent of the fraudulent vendor, as showing the good faith of the conveyance, and the justice of the creditor’s claim.
*It is said, however, that the creditor having notice of the [256 fraudulent character of the vendee’s title, stands on no higher 'ground than any other purchaser with notice; and the ease of Ashmead v. Heard, 13 Penn St. 584, is relied on. Bightly understood, however, the doctrine of that case is merely that a preference of. one creditor, made with the very purpose, known to the creditor, of defeating the claim of another, would be void, notwithstanding a full consideration were paid. This doctrine is too reasonable to be doubted. If Brown & Co. had any such purpose, or shared in it, their mortgage must fail.
And this brings us to the question whether, admitting the power of the fraudulent vendee to make such a mortgage as this, so far as vendor, vendee, and mortgagee are concerned, it can still be fairly contended that the rights of other creditors forbid such an arrangement?
In endeavoring to ascertain what rights other creditors might have acquired from the fraudulent vendor himself, should he repent of his fraud, much light may be taken from Owen v. Dixon, 17 Conn. 492. A sale, fraudulent as to'creditors, had been made by J. to W., and the property had been held by W. while he lived, and his executor named it in the inventory, and held it in possession, when a creditor attached it, as J.’s property, and it was delivered *257 to the creditor. Shortly afterward, the defendant, without authority from the vendee’s executor, but by written authority of J., the fraudulent vendor and the debtor, sold the property. The executor of W. brought trover, and the court sustained the action. However fraudulent, the conveyance of J. was held to estop him, and all acting by his authority, or as his agents, whether creditors or not, from disputing the validity of the sale to W. The language of the court deserves attention, and though the whole’decision can not be cited here, the following ought to have room:
“ It appears, however, that the defendant was a creditor of Johnson ; and the next question is, whether he was protected against 157] this action, on that ground ? It is a familiar ^principle that a fraudulent conveyance of property is void, as to the creditors of the vendor.- By this is meant, that the rights of a creditor, as such, are not, with respect to the property, affected by such conveyance ; but that he may, notwithstanding the conveyance, avail himself of all the remedies for collecting the'debt out of the property, or its avails, which the law has provided in favor of creditors; and that, in pursuing those remedies, he may treat the property as though such conveyance had not been made; that is, as the property of the fraudulent vendor. The conveyance is ineffectual to shield the property in the hands of the vendee, from the just claims of the creditors of the vendor, when those claims are prosecuted against it in the manner pointed out by law. Not that a creditor may seize it without any legal process, in the hands of the fraudulent vendee, and appropriate it of his own head to the payment of the debt due by the vendor; neither the general principles of law, nor the particular laws which are enacted for the collection of debts, confer any such right on the creditor. He may cause it to be appropriated to the payment of his debt, but he can do this only in the mode the law prescribes; and if he departs from that mode, his proceedings are unauthorized by law, and, therefore, wrongful; and he thereby makes himself liable as a wrong-doer to the owner of the property, who, where there has been no conveyance, is the debtor, and where there has been a fraudulent one, is the vendee, because such vendee’s title is good against the vendor, and also against all others, including the creditors of the vendor, who do not protect themselves against him by pursuing that prescribed course by which alone the property can be made available to creditors. A creditor at large, as it is termed, can not impeach the conveyance, *258, 259 but only a creditor having some process on which the property may be lawfully seized, and by which it is made liable, either immediately or ultimately, to be appropriated in satisfaction of his debts. Such process, by our law, is an attachment or execution, to one of *which it is necessary for a creditor to resort, and to either [258 of which he may resort, in order to avail himself of the property thus fraudulently transferred. Without such process he has no right to meddlqwith the property; and if he should do so, he would be liable to all the consequences of an unlawful interference with it, equally with any other person who was not a creditor. After the property is seized on an attachment or execution, it is further necessary that all the subsequent steps prescribed by law, should be taken with it. In the case of an attachment, the creditor must pursue the action in which the property was attached, to judgment and execution; and the latter must be in the manner pointed out by law. If any of these steps are omitted, the property is discharged from the lien created by the attachment or execution, and must be restored to.the owner. That owner, in the present case, would be the plaintiff.”
This case, and others which might be cited, seem to establish that the fraudulent vendee can not, through or with his creditor, avoid his sale. Whether a subsequent sale, made by the vendor in the payment of a debt, can have the effect of avoiding the fraudulent conveyance, is, indeed, left an open question in the case named. Indeed, it is not even declared that any purchase whatever, from the fraudulent vendor, made subsequent to the fraudulent conveyance, may not stand against it. The court says : “ If the defendant were a purchaser, the ease would present the question (at least as to the personal property), whether a fraudulent grant would prevail as between the grantee and a subsequent purchaser. This question would not be free from difficulty.” But the question, though difficult, is not unanswerable; it appears to us to be solved by the reasoning of the Connecticut court itself, against the validity of any such subsequent'sale; and certainly the argument of counsel for the plaintiff in that case furnishes at least one good reason against upholding any such sale. It is well put, that, “ allowing that the contract was fraudulent, and that the creditors might treat it as a nullity, still it can be so ^treated only in the course of [259 legal proceedings. In the first place, the plaintiff (the fraudulent vendee) was interested, and had a right to have the property sold *260 in the manner provided by law. Secondly, he was entitled to the surplus, in all events.”
When it is remembered that a sale may be fraudulent notwithstanding the full payment of a fair price, this reasoning will appear to be worthy of great attention. Many cases may be supposed, in which the vendee, improperly influenced, and weakly yielding so far as to become a party to the fraud in the first instance, may be induced by repentance, or even an intelligent selfishness, to do right to the creditors; and there seems to be no good reason why he should not be allowed to do it without subjecting the creditor to injury or disappointment. It would be a great hardship if he could not act so honestly without the formal assent or ratification of a vendor, who may have absconded (as Gamier did), or if the fraudulent vendor could dispose of property, in which, after paying all just claims on it, the vendee may have a large and valuable interest. Not a case can be found in which, with the vendor’s assent, sometimes implied from his mere presence or silence, the vendee has not been allowed to convey; no conveyance by the vendor himself, no formal participation on his part in it, is ever required Now, with the greatest possible regard for those who insist on the vendor’s assent as necessary to the conveyance, we must be allowed to say that such assent is not of the slightest value so far as power is concerned.
When Gamier sold this property to Bour, he effectually assented, in fact, to whatever Bour might choose to do with it; and he effectually assented, in law, to whatever his vendee might honestly do with it. His sale did not become revocable the moment Bour proposed to pay the creditors with the property and revocable then only. In this case, as in many others, the better trustee for the the creditors proved to be the fraudulent vendee; far better, that is to say, than the fraudulent vendor. It would be a strange rule of 2(50] law *which would prefer a disposition made by one in Garnier’s position, to a conveyance like that of Bour.
Indeed, of the many illustrations which might be furnished to show how entirely free from liability to abuse is the right we have recognized in a fraudulent vendee, and how beneficial may often be its operation as to creditors, no case is better than that before us.
In circumstances showing fraud as to creditors, Gamier sells his goods to Bour. He then absconds; before his return Bour acts the part of an honest man', and without suit, and, so far as we know, *261 for the single purpose of paying a debt for which the goods ought to be bound, executes a mortgage for the most diligent creditor. G-arnier may never return. Shall the creditor be put to suit, and Bour to costs of suit, or shall the creditor, by the mere act and agreement of the vendee, have that preference which is the reward of diligence ? The rights of other creditors, however, are supposed to conflict with the exercise of the power we allow to the vendee. But how? The most diligent creditor has a right to the fruits of his diligence. And, in this particular case, it is plain that, as to other creditors, Brown & Co. obtained nothing which Gamier himself might not well have given them.
If it be answered that Walter Stone had, or might have, some peculiar claim to preference, and that a returning sense of justice on the part of Gamier might have induced him to make that preference, we must suppose that case and proceed to try it according to established principles of law. What peculiar claim to preference is known to the law or should be protected by it ? Is there any but diligence in pursuing the goods ? Do not all creditors stand alike before the law as to their claims on an insolvent estate, until some one acquires the superior claim of diligence and vigilance? I think it can not be conceded that the law will countenance or protect any other preference; for, in the very nature of any other is necessarily implied that of an intention to hinder some other creditor. And, in the case last ^supposed, if Gamier [261 had recognized the right of Stone, and the latter had, in anticipation of another creditor, presented himself to the vendee, the refusal of the vendee to pay him would drive him to suit, and he would still 'have and secure the benefit of his superior vigilance. Moreover, after such demand by the creditor preferred by Gamier, Bour could hardly have made any arrangement to prefer another creditor, in anticipation of the process of him who first presented himself; and in every such case the arrangement would be a fraud in the vendee, while in ninety-nine out of a hundred it would be equally fraudulent in the creditor so favored by the vendee.
It is unnecessary to pursue this investigation of the supposed consequences of allowing the vendee to purge himself of fraud, in the manner we have recognized as just and lawful. The reasons given in the charge excepted to, are quite satisfactory on this subject, and we adopt them fully.
We are satisfied that a conveyance made to defraud, can not be *262 characterized simply as void against creditors. The doctrine, which is to be collected from, authority and reason, seems to be, that a sale of goods, made with intent to defraud the vendor’s creditors, is absolutely void only against the legal process of the creditor.
The utmost concession allowed by the law to the interests of creditors, leaves it still certain, that until a seizure by a creditor’s writ, the fraudulent vendee can do with the property all that the vendor might have done had he retained the goods. Now, the vendor might have given the mortgage, notwithstanding the claim or process of any other creditor, unless the very object of the mortgage was to defeat that claim or process. Why, in the absence of such fraudulent intention to defeat the claim of any particular creditor, the fraudulent vendee may not execute a like mortgage to secure a particular creditor, I confess I am wholly unable to perceive ; and I am quite willing, in every such case, to dispense with a thing so vain and insubstantial as the-formal consent or ratifica262] tion of one who has long since parted *with all his property in the goods mortgaged. If the vendor repent of his fraud, and feel disposed to secure any'creditor who may demand such security, the effect of notice given by him to the vendee of such desire, upon any other and subsequent disposition of the property in behalf of some other creditor, is to be determined by inquiring whether there was any good reason, relating to vigilance, or anything else, for preferring the creditor named by the vendor. These are matters to be considered when some case shall present them. They are not before us now. Here is no question of defeating or postponing any claim whatever.
Our conclusions, then, may be thus stated: A conveyance by a fraudulent vendee of goods in payment or security of the vendor’s debt, requires no other assent than that which is contained in the vesting of the vendee with all the vendor’s right in the property. No just preference of creditors can be thus defeated; since in every case in which the claim of the creditor is fair, the law would reward the greater vigilance of the creditor, and deny to any other creditor a preference resting in the favor or fraud of the vendor himself. Nor can the vendor suffer by allowing such a right in his vendee; for if the consideration remain unpaid, he can well question the amount to be paid by the vendee, if the whole fraud has been removed on his own part; and if the consideration be wholly paid, *263 the vendee would pay at his own immediate expense and his own ultimate peril.
As to the mortgage, the charge of the district court was, in our judgment, a correct exposition of the law. It is unnecessary to say whether we agree or disagree to the intimation in 20 Ohio, that this mortgage could be treated as within the statute, providing that certain conveyances, when made to prefer certain creditors, shall in chancery inure to the benefit of all. We would merely remark, that the syllabus of that decision appears to go beyond what was intended to be decided in that case, and that the language of Caldwell, J., is not nearly so strong as to justify that of the syllabus.
*The judgment of the district court must be affirmed.. [263
Rannev, J.
In my opinion this judgment should be reversed. The case was before the Supreme Court at the December term, 1851, 20 Ohio, 389. As the record then presented it the defendants in error had attempted, in the court below, to sustain their mortgage by showing that it was made with the assent of both Garnier and Bour. But the court, in effect, charged the jury that the title would still be invalid if the mortgage was taken with knowledge that the conveyance from Garnier to Bour was fraudulent. This instruction was held to be erroneous, and the cause was remanded for a new trial. The point upon which the decision was made is thus stated by Judge Caldwell, who delivered the opinion of the Supreme Court: “ Before the sale of the goods to Bour, the plaintiffs would have had a right to have their claim secured by a mortgage from Gaimier on the goods; and we do not see why Garnier and Bour might not agree, as they did, that plaintiffs might have the benefit of the goods as security for their debt, as though no such sale had taken place. They were thus doing away the fraud commited by the sale, and using the goods in the way the law required they should be used — in the payment of Garnier’s debts.”
The district court, very properly, considered themselves bound by this decision ; but in giving effect to it they mistook the very turning point upon which it was made, and instructed the jury that notwithstanding the transfer by Garnier to Bour was fraudulent as to the creditors of Garnier, it was still competent to Bour to make a valid mortgage of the goods to one of the creditors of Garnier, having notice of the fraud, with or without the assent of Garnier. The assent and concurrence of Garnier was made indis *264, 265 pensable to its validity by tbe Supreme Court, and made wholly immaterial by the district court. Now, in my opinion, the decision of the Supreme Court is as clearly right as that of the district court is clearly wrong. The first resting upon settled prin264] ciples, applied in numerous adjudications; and *the last, so far as I know, unsupported by either. That the assignment made by Gamier to Bour was fraudulent, is conceded. No attempt is made by either party to uphold it. The legal consequences are that the conveyance was effectual between the parties to the fraud, and utterly void, to all intents and purposes, as to the creditors of Gamier. But while the law left Gamier without remedy to compel a restoration of his goods, it still recognized tbe ¡moral obligation of Bour to restore them ; and if he availed him¡self of the locus penitentice, and complied with this moral duty, it •so far respected his act and intention as to relieve him from accountability as a trustee to the creditors of Gamier, which rested ¡upon him while he retained the possession. This was so held in Swift & Nichols v. Holdridge, 10 Ohio, 230. Judge Lane says: “An honest man will not take a fraudulont conveyance. If a man ■holds property fraudulently conveyed, as soon as he comes to a sense of his moral duty he will restore it to those to whom it belongs ; he ought to give it back to him from whom he received it, 4hat it may be applied to his debts if wanted, or to his benefit if not necessary for this purpose. The law to discourage frauds does not compel him to restore it to the fraudulent grantor ; yet no man will retain it for a moment who desires the reputation of honesty, or possesses the sense of justice.” “And if the fraudulent holder has in 'good faith divested himself of that which he could not retain without dishonesty before the right of the creditor has accrued, there is nothing remaining upon which to raise a trust, and the relation of trustee to anybody subsists no longer.”
While the property remained in the hands of the fraudulent .•grantee, the grantor could make no valid conveyance of it, either to a creditor or purchaser, for valuable consideration, because he could only convey to his second grantee such right as he had; and having no right to reclaim the property from the fraudulent holder, he could give such grantee no right. As against any creditor of -the grantor, the grantee could make no valid conveyance of the '265] property *to one having notice of the fraud; because, as ¡against such creditor, his title was utterly void, and having no *266 title himself, he could convey none. Under such circumstances the property can be effectually reached only by one having rights superior to either of the fraudulent parties — -judicially ascertained and enforced in the manner provided by law. It can not be done by a conveyance from either, which can rise no higher than the source* from which it is derived; but it must get its efficacy from the disposition which the law makes of subjects within its control.
But before G-arnier parted with his property, or after it was restored to him, he might convey or mortgage it in good faith to one of his creditors; although the effect might be to deprive others of their recourse upon it. By our law this is rather permitted than encouraged. The law does not regard the particular form in which this may be done; it looks at the substance of the transaction, and from that,-fixes the rights of the parties. When, therefore, Gamier and Bour concurred in mortgaging the property to the defendants in error for a debt that Gamier owed them, it was, to every substantial purpose, a restoration of the property to Gamier, followed by a valid mortgage from him upon it. In the language of Judge Caldwell: “ They thus did away the fraud committed by the sale, and used the goods in the way the law required they should be used — in the payment of Garnier’s debts.” Bour’s concurrence was necessary to evidence his willingness to restore the property, and Garnier’s to give the preference which the mortgage secured. This was the case supposed to be made in 20 Ohio, and these the considerations upon which the judgment was based.
But this case was not made upon the new trial; and leaving Garnier* entirely out of the account, the court lay down the broad doctrine, that a fraudulent grantee may lawfully defeat or postpone one of the creditors of his grantor, by making a mortgage to another. Upon what principle can this be ‘done ? The law, in the most positive terms, declares every conveyance made to defraud creditors, null and void *as to each and all of them; and ,gives to [266 each the perfect right to pursue the property by legal process, precisely as though it never had been made. Stone had the same right as Brown & Co., and was as well entitled as they,-to the reward of his diligence, if he first levied his execution upon the goods. If Bour had received no conveyance from Gamier, and had made to Brown & Co, a mortgage, would it be thought that he could in this way give them a lien upon the goods to stand in the way of Stone’s execution ? If not, what better is a conveyance that the *267 law declares an absolute nullity, than none at all? “Void things are as no things,” and, as against Stone, Bour acquired no interest in, or power over, the goods, by the conveyance. It was not void, for some purposes, and valid for others; but it was an absolute nullity for every purpose; and so completely so, that the law ignores its very existence. So far as every creditor of Gamier was concerned, the property still belonged to him; the ownership and possession was his, and it was liable for his debts in the same manner, and to the same extent, as though he had never attempted to convey it away. Brown & Co., it is true, were honest creditors of his; but being an honest creditor is one thing, and having a lien upon the debtor’s property, to the exclusion of other honest creditors, is quite another and distinct thing. The law treats all honest creditors alike; and except in the case of assignments, governed by the statute, gives the preference to the one who first attaches a specific lien upon the property. This can be done but in one of two ways; first, by the levy of legal process; or, second, by conveyance or assignment from one having power, as between the creditors, to give the preference. Stone first levied upon the goods, and thus obtained priority; but he has been deprived of his legal rigth to the reward of his diligence, by the previous intervention of the fraudulent grantee, in favor of another creditor having full notice of the fraud. That this was a void act as against him, seems to me so obvious, as to defy all effort at reasoning. It is certain that Bour had nothing 267] but what the fraudulent assignment *gave him; and equally certain, that he could convey to Brown & Co. no more than he had. That assignment gave him a perfect title as against Gamier, and everybody else but Garnier’s creditors; and he could, therefore, invest Brown & Co. with the same perfect title as against all such persons. But it gave him no right or title whatever, as against a creditor of Gamier, and it would seem to follow that he could confer none upon Brown & Co. Without the mortgage", they had no lien upon the property’; and as Bour, so far as Stone was concerned, had none, it is legally impossible that they should have derived any from him. So far' as the mortgage goes, they took his place, and stood in his shoes; and as he was utterly powerless to withhold the property from Stone’s execution, they were equally so. Nor, had they any right to, or lien upon, the goods independent of the mortgage. As creditors at large, it is conceded they could not ac- ’ *268 quire any such right, or lien, by taking possession of the property, either from Gamier or his assignee.
But much is said in the argument of the equitable right to compel Bour to deliver the goods to them, or to apply them in security of their debt; and it is hence inferred that if he has done but what the law would have compelled him to do, the arrangement can not be disturbed. To say nothing of the conclusion, the premises upon which this argument is built, are laid in entire mistake. Bour owed them no such duty, and they had no such remedy. At no time could they have compelled Gamier or Bour to give them security for their debt. Bour’s simple duty was to restore the goods to Gamier, in good order that he might apply them in satisfaction or security of his debts, if he saw proper; or, if not, that they might be within the reach of legal process in his hands. But, as is said by the court in Swift v. Holdridge : “The relations between him and the creditors of the debtor are different. There are no express obligations between them; no promise to be accountable to them; no obligation to restore to them.” .... “ The character of cestui que trust does not belong to the general creditor, until he has shown himself ^entitled to the debtor’s [268 property by the recovery of a judgment.” The rights that the law conferred upon Brown & Co., it conferred upon Stone, and every other creditor of Gamier. What it did for one, it did for all. Eor their benefit it annulled the fraudulent assignment, and left the goods subject to seizure upon legal process, precisely as though it had never been made. Every creditor had an equal right to make such seizure ; and when he had made it, a perfect right to appropriate the property to the payment of his debt, in preference to those who were later in time, or who had not levied upon it. This right belonged to each creditor, as such — was paramount to the rights of either of the fraudulent parties, and beyond their control. Stone availed himself of it, obtained a judgment, and levied upon the goods.
Brown & Co. never recovered judgment, and never levied upon the property. Mere general creditors having no power, by their own act, to fasten a lien upon the property, they have undertaken to get one from the fraudulent assignee, who had no more power to take from Stone this paramount right, with which the law had clothed him, than he would have had if he had never heard of Gamier or the property. At one moment, Brown & Co. claimed *269 under him,-and the next adversely, to him. In either way, their claim against Stone is utterly groundless. "Without him, they had no right to take the goods withotit process, and if they did, were trespassers; with him, and under him, they could get no more than he had, and could get no rights as against Stone, for the plain reason that he had none. And yet, by a most singular application of legal principles, as it seems to me, without the least power in either of the parties to arrest the due execution of Stone’s legal process, the two together have been enabled to turn two blanks into a prize, so as to deprive him of a legal right, as nearly perfect as any that the law confers.
But it is further insisted that Garnier, by the assignment, invested 269] Bour with full power to make the mortgage to Brown *& Co., or any other disposition of the property he might see fit; and, therefore, that the mortgage was made with the assent and concurrence of both Garnier and Bour. This argument assumes as undoubted what no amount of reasoning could establish. It supposes the fraudulent deed to be operative for this purpose against Stone, a bona fide creditor of Garnier, when exactly the opposite is indisputably true. It is not doubted, that it divested Garnier of all interest in, or power over, the goods, and as against him clothed Bour with all the attributes of perfect ownership. But in respect to Garnier’s creditors, as I have already said, it was utterly void— a perfect nullity — for every purpose. As against them, it invested Bour with no right of property or possession, and no power of disposition. It was fraudulent and void in all its effects and consequences, direct and incidental. A man can no more, by a fraudulent instrument, give a power of disposition of his property to the prejudice of any one of his creditors, than he can make a valid conveyance of it. Much less can there be elicited from an ineffectual cheat by conveying the property, an incidental power to make a valid disposition of it at the discretion of the fraudulent vendee.
I have considered the case as though Bour had given the mortgage to secure Garnier’s debt. Such, however, is not the fact. Brown & Co. assigned to Bour their claims against Garnier, and took Bour’s notes for the amount, and for the security of Bour’s notes the mortgage was taken; so that the proceeds of .the property did not pay Garnier’s debt, but it was left open and subsisting in the hands of Bour. But I do not care to pursue this view of the *270 subject. I am content to let the case depend upon tbe right of a fraudulent assignee to defeat the legal process of one creditor of his assignor by making a mortgage or conveyance to another. The power to do this, with perfect respect for the better judgments of my brethren, I feel constrained to deny. I can never agree that a fraudulent conveyance or assignment is anything'more than a nullity to every intent and for every ^purpose; nor can I believe [270 that one so justly odious in the sight of the law, as the fraudulent recipient of the debtor’s property has always been held to be, is invested with the high prerogative of deciding between those he has endeavored to cheat, or that their respective rights can be made to depend upon his sense of justice.