## LUCKEY vs. ROBERTS.

L. brought an action of trover against O. to recover for goods in his possession fraudulently purchased of the plaintiff on credit by W., and by W. sold to O.—claiming that W., O. and one T. had conspired to defraud him in the purchase of the goods. Held, that to prove the conspiracy, a like fraud committed by the alleged conspirators about the same time on a third party, was admissible in evidence.

Also that, if O. had participated in the fraud by which the goods were procured, no demand on him for the goods, before bringing the suit, was necessary.

Also that the fact that the same goods had been attached in the present suit, the officer who attached them having soon after delivered them back to the defendant on his receipt therefor, furnished no reason for reducing the damages below the actual value of the goods.

The court having charged the jury, in the case, that if the defendant made the purchase of W., knowing, or having reason to believe, that the goods were not paid for, and that it was the intention of W. to abscond and to defraud his creditors by means of the sale to him, then his purchase from W. was as against the plaintiff fraudulent and void,—the court having, in a previous part of the charge, instructed the jury as to the effect of the original fraud, in preventing the passing of the title to W.,—it was held, that the court was to be understood as speaking here of the infirmity of the defendant's title, and not as intending that, by force of these facts alone, a title to the property would vest in the plaintiff, as the mere creditor of W., irrespective of the original fraud; and that this part of the charge, taken in connection with the rest, was unobjectionable.

TROVER: brought to recover the value of a quantity of groceries, sold by the plaintiff to one William E. Roberts, in December, 1853, and now in the hands of the defendant. The plaintiff claimed to have rescinded the sale for fraud. The case was tried to the jury on the general issue, at the term of the superior court, holden in Fairfield county, in October, 1856.

On the trial, the plaintiff offered evidence to prove that the said William applied to him at his place of business in New York, to purchase the goods in question on credit, delivered to him a letter of recommendation from J. E. Thorp & Son, a mercantile firm of Bridgeport, in this state, where also the defendant and said William resided, and represented that he was a merchant in Bridgeport, of large

property, in good credit, and able to pay for the goods; and that, induced thereby, he sold and delivered to him the goods on credit; that said representations were entirely false; that said William was an utter bankrupt, and within ten days after obtaining possession of the goods, absconded, leaving the goods, and all other visible property in his hands, in the possession of the defendant. The plaintiff also offered evidence to prove that at the time said J. E. Thorp & Son gave said letter of recommendation, they knew that it was false, and that said William was destitute of property and unworthy of credit, and claimed that the said William, the defendant, and said J. E. Thorp & Son, had conspired to defraud such persons as they might be able to deceive, by the purchase of goods on credit, through the agency of said William, and that the fraudulent purchase in question was made in pursuance of the conspiracy.

And to prove such fraud, the plaintiff offered one Middlebrook, a merchant of said Bridgeport, to testify that, about the time of the sale of the goods by the plaintiff, the said William applied to him to buy goods on credit, and made representations regarding his property and trustworthiness, of the same kind as those made to the plaintiff, and also referred him to said J. E. Thorp & Son for information regarding him, who on being inquired of, informed him that said William was trustworthy and could be depended upon; and that he thereupon sold him sundry goods on credit, which he afterward, on the absconding of said William, found in the possession of the defendant. To this evidence the defendant objected, because the transaction had no connection with that between said William and the plaintiff, and because it had not been proved that any conspiracy, such as the plaintiff claimed, between the defendant and said William, in fact existed. But the court admitted the evidence, remarking to the jury that it would not prescribe to the plaintiff the order in which he should introduce his evidence, but that said testimony should be laid out of the case, unless in the course of the trial the conspiracy should be proved to the satisfaction of the jury.

The defendant claimed that he bought the goods of said William, in good faith, and paid a valuable consideration for them, without notice of any fraud in the purchase of them, or of any fraudulent intent in selling them to him. He also offered evidence to prove that after the sale to him, the plaintiff, after he had obtained full knowledge of the fraud of said William, elected to affirm the original sale, and commenced a suit by attachment against said William for the price of the goods; and prayed the court to charge the jury, that if they should find that the plaintiff had thus affirmed the sale, after he had obtained full knowledge of the fraud, he was not entitled to a verdict, whatever the manner in which the defendant had obtained the goods from said William might have been.

The defendant also offered evidence to prove that no demand for the goods was made by the plaintiff of the defendant before the commencement of the suit, and prayed the court to charge the jury that without such demand the plaintiff could not recover.

It was agreed that the goods in question were, by the plaintiff's direction, attached in this suit and thereupon taken by the officer out of the possession of the defendant, and retained by him for some time, until the defendant gave a receipt therefor in the usual form, when they were delivered back to him, and had never been returned to the officer or to the plaintiff. Thereupon the defendant requested the court to charge the jury that, even if the plaintiff was entitled to a verdict, he could not recover the full value of the goods, but only actual damages for the detention from the time of the demand to the commencement of the suit.

The court charged the jury that if the said William, intending to defraud the plaintiff of the goods in question, represented to him that he was a man of property and able to pay for them, and those representations were false in fact, but the plaintiff believed them to be true, and induced thereby contracted to sell the goods and delivered them to the said William, then such contract was void as between the plaintiff and said William, and as between them the

plaintiff had a right to reclaim the goods, as if no such contract and no such delivery had been made.

And that if the plaintiff, after the sale, with a full knowledge and comprehension of the fraud, intentionally affirmed the contract of sale, and openly elected to treat the contract as valid, and the goods as the property of said William by the sale, he was bound by such election, and had no right afterward, and after a *bona fide* sale of the goods to the defendant, to repudiate the sale.

That if the jury should find that the defendant originally participated with the said William in the procurement of the goods by fraud, then his title to them would be no better than that of said William. But that if he in no way participated in the fraudulent procurement of the goods, and had no notice thereof, and no notice of said William's intention to defraud the plaintiff by avoiding payment therefor, and bought the goods of said William in good faith, he was entitled to a verdict, whether the said William procured the goods from the plaintiff fraudulently or not.

That if the defendant made the purchase of said William, knowing, or having sufficient reason to believe, that the goods were not paid for, and that it was then the intention of said William to abscond, and defraud his creditors by means of such sale to the defendant, then the defendant's purchase was as against the plaintiff fraudulent and void, and the defendant could not hold the goods.

That if the suit was commenced before any demand had been made for the goods, the verdict should be for the defendant, unless the jury should find that the defendant participated with said William in his fraud, in which case such previous demand would not be necessary.

And that, although it was admitted that the goods in question were, by the plaintiff's direction, attached in this suit and taken by the officer out of the defendant's possession, yet if they were delivered back to him upon his receipt, and were converted by him to his own use, claiming them as his property, if the plaintiff was entitled to recover at all, the rule of damages would be the whole value of the goods with

interest thereon, and not merely the damages occasioned by the detention as claimed by the defendant.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial, for error in the admission of evidence, and in the charge to the jury.

*Hawley* and *Sturges*, in support of the motion.

1. The court erred in charging the jury that a full knowledge and comprehension of the fraud was necessary to give to the plaintiff's acts the effect of an affirmance of the sale. A full knowledge is not necessary. If the plaintiff had learned that which entitled him to rescind the sale, and after that elected to consider it as valid, he can not afterward rescind it, though he should discover further developments of fraud. *Walker* v. *Davis*, 1 Gray, 506. *Brewer.* v. *Sparrow*, 1 B. & C., 310. *Campbell* v. *Fleming*, 1 Ad. & El., 40.

2. The court erred in charging the jury that if the defendant knew that the goods were not paid for, and that William E. Roberts intended to abscond and defraud his creditors, he could not hold the goods.

All this is consistent with a purchase originally *bona fide*, and which vested the title fully in the purchaser; an intention to defraud creditors generally, would make the defendant's purchase simply void as against creditors, who by attaching the goods as the property of the defendant's vendor, could take them from him; but it would give the plaintiff no right to rescind the original sale, nor to claim the property from the defendant, but only to attach and hold it as the property of William E. Roberts, on the ground that he was a creditor of said William. *Owen* v. *Dixon*, 17 Conn., 492.

3. A demand was necessary, even if the defendant participated in the alleged fraud, since, until the sale was rescinded, the title was good in the purchaser, and in the defendant as derived from the purchaser. And the defendant having title, his detention of the goods could become wrongful, only after a demand and a refusal to deliver them up. *Hoffman* v. *Noble*, 6 Met., 68. *Morey* v. *Walsh*, 8 Cowen, 238. *Rowley*

v. *Bigelow*, 12 Pick., 307, 313. *White* v. *Garden*, 53 E. L. & Eq., 379. *Stierneld* v. *Holden*, *Ry. & Mo.*, 219, (21 E. C. L., 422.) *Kingsford* v. *Merry*, 34 E. L. & Eq., 607. *Saltus* v. *Everett*, 20 Wend., 267, 279. *Cooper* v. *Chitty*, 1 Burr., 20. *Carlisle* v. *Leonard*, 7 Bing., 298, (20 E. C. L., 136.) *Feret* v. *Hill*, 26 E. L. & Eq., 261. *Stewart* v. *Spedden*, 5 Md., 433. *Root* v. *French*, 13 Wend., 570. *Thompson* v. *Rose*, 16 Conn., 71, 83. *McCarty* v. *Vickery*, 12 Johns., 348. *Spafford* v. *Roof*, 9 Cowen, 626. *Newnham* v. *Stevenson*, 3 E. L. & Eq., 512.

4. If the sale was rescinded, then the title to the property, remaining in the plaintiff, would not vest in the defendant until judgment was recovered against him. Therefore when the plaintiff attached the goods, they were his own property, and recovering possession, by whatever means, the property is to be considered as returned to him; and the rule applies that the return of property unlawfully taken or withheld, goes in mitigation of damages. *Curtis* v. *Ward*, 20 Conn., 204.

5. The evidence of the fraud alleged to have been committed on Middlebrook, was inadmissible. It was a transaction between other parties.

*Loomis* and *Morris*, contra.

1. The testimony of Middlebrook was admissible. Such acts of conspirators toward other parties are always received as proof of conspiracy in the particular case. *Pierce* v. *Hoffman*, 24 Verm., 525. *Gibson* v. *Hunter*, 2 H. Bl., 288. *Beal* v. *Thatcher*, 3 Esp., 194. *Gardner* v. *Preston*, 2 Day, 205. Sw. Ev., 153. 1 Greenl. Ev., sec. 116.

2. A vendor may reclaim goods from a fraudulent purchaser. No title passes by a sale procured by fraud.

3. And if the defendant participated in the fraud, then his title was affected by it in the same manner. And no title passing to the defendant, and his possession being obtained by fraud, his detention of the goods was unlawful without any demand made upon him to deliver them up; and such demand was therefore unnecessary.

4. The purchase of the goods by the defendant from William E. Roberts, was clearly a fraud on the plaintiff, and therefore void as to him, if the defendant knew that said William had not paid for the goods, and made the sale intending to defraud his creditors thereby; and the charge of the court required the jury to find this.

5. The attachment of the goods, the holding of the same by the officer, and his redelivery of them to the defendant, on his giving a receipt therefor, did not constitute a return of the property to the plaintiff, and the damages ought not to have been reduced, as the defendant claims, in consequence.

ELLSWORTH, J. We think there is nothing wrong in the ruling of the court, that the testimony of S. M. Middlebrook should be received for the consideration of the jury. Whenever a conspiracy is alleged as the means of effecting a fraudulent purchase of goods, it is the constant practice of courts to receive, as evidence of the character of the act, like fraudulent acts between the same conspirators, at or about the same time and of the same nature, in furtherance of the fraudulent design. And so long as the conduct of men is allowed to throw light upon their motives of action, so long such evidence is most proper to go to the jury, when those motives are the subject of inquiry.

This principle was fully recognized in *Thompson et al.* v. *Rose*, 16 Conn., 71, and in *Gardner* v. *Preston*, 2 Day, 205; and it is the uniform doctrine of the books.

As to the objection that the plaintiff could not sue the defendant for the fraud after he had ratified and confirmed the sale to W. E. Roberts, with knowledge of the fraud, we do not perceive its applicability, since the court charged the jury as was requested by the defendant.

The court further charged the jury, and correctly according to our views, that no demand before suit was necessary upon the defendant, if he had participated with said William in the fraudulent purchase from the plaintiff.

The court was correct as to the matter of damages, for the

plaintiff had lost his property by the fraud of the defendant, and why should he not recover its full value.

Another objection has been urged with apparently more confidence. It is said the judge was incorrect in instructing the jury "that if the defendant made the purchase of said William, knowing, or having sufficient reason to believe, that said goods were not paid for, and that it was then the intention of said William to abscond and cheat his creditors by means of the sale to the defendant, then the defendant's purchase was, as against the plaintiff, fraudulent and void, and the defendant could not hold the goods." It is said this ruling is inconsistent with the law laid down by this court in *Dixon* v. *Owen*, 17 Conn., 492, that a fraudulent sale by the owner of goods does not give a title to the goods to a creditor, and that he can get a title only by a sale on execution. The difficulty grows out of a misconception of the charge. Doubtless the law is, as was laid down in *Dixon* v. *Owen*, that a creditor, by virtue of the relation of creditor and debtor, has no title to the debtor's property, if he does nothing to acquire the title. But then what has the doctrine to do with this case? Nothing, as we understand the charge. The defendant, here, was insisting that he was a *bona fide* purchaser from his brother William, not that the plaintiff had no title, if he had been defrauded as he claimed he had, but that the defendant had purchased the goods honestly and therefore, at all events, he had acquired a good title. The court, in this part of the charge, intended to state, and we think did state, what was essential to constitute a *bona fide* purchase by the defendant. The court was not speaking of the plaintiff's title but of the defendant's, for of the plaintiff's title it had already expressed its views. If the whole charge is taken together, as it should be, it does not appear to us to be incorrect in this latter particular, nor in any other so far as we discover, and therefore we do not advise a new trial.

In this opinion the other judges, STORRS and HINMAN, concurred.

New trial not advised.