## The Bay State Milling Company *vs.* Susman, Feuer Company.

Third Judicial District, New Haven, January Term, 1917.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In an action of replevin for several hundred barrels of flour, the plaintiff alleged that it had been obtained by *S & K*, the original vendees, by fraud and without intending to pay therefor, and had then been turned over or sold by them, when about to fail, to the defendant company, which took it either as an active participant in the fraud or with notice of such facts as precluded it from being a bona fide purchaser. *Held* that a written financial statement by *S & K* of their condition, which indicated a considerable surplus, was admissible in evidence to show the conditions under which the plaintiff had agreed to extend a line of credit to them; and, in connection with their subsequent bankruptcy, was admissible as evidence of an intent to defraud the plaintiff, either at the outset or by concealing a subsequently developed insolvent condition while still asking for and obtaining a line of credit based upon such financial statement.

An action of replevin by the vendor for the goods sold is in itself an election by him to rescind the sale.

The defendant contended that the plaintiff had affirmed the sale to *S & K* by filing and proving in the bankruptcy court a claim for the price of the flour. *Held* that to rebut the inference in support of this contention, arising from the admission of certain abbreviated entries of the referee in bankruptcy, the plaintiff might introduce copies of its original and amended claim, after proof that the originals had been lost, for the purpose of showing that the claim actually proved was not unconditional, but, as amended, expressly disclaimed the value of the flour replevied and sought only the balance of the purchase price as a debt.

It appeared that while all the sales of flour were pursuant to the general terms of the original contract to extend credit, each shipment was the result of a separate order, made at a different time, and at a price separately agreed upon. *Held* that for the purpose of electing whether to affirm or rescind these sales, each might be treated separately by the plaintiff.

The defendant insisted that the debt proved by the plaintiff's amended claim in bankruptcy, included some part of the purchase price of each of the four shipments of flour which were traced to the defendant's possession, and that thereby each and all of such ship-

ments had been affirmed. *Held* that inasmuch as the defendant had failed to prove how much of the replevied flour was included in the sale or sales which, upon its own theory, had been affirmed by the plaintiff, it had not made good its second defense by proving the plaintiff's alleged affirmance as to all the sales or as to any one sale in particular.

Evidence was admitted tending to prove that a bookkeeper in the defendant's employ acted as its assistant manager, and that he had been informed that *S & K* were in failing circumstances. *Held* that the evidence was properly admitted, and that the jury were correctly instructed that it was for them to determine as a question of fact whether the bookkeeper acquired any knowledge or notice of the insolvency of *S & K;* and furthermore, that if he was not then acting for the defendant and within the scope of his authority, then any notice or knowledge acquired or received by him could not bind or affect the defendant.

Knowledge on the part of a purchaser of goods, of facts and circumstances which ought reasonably to excite suspicion and put one on inquiry, is sufficient to charge him with notice of what, by the exercise of ordinary diligence, he might have ascertained; and whether he acted honestly or not in the transaction, is then a question of fact for the jury, in the light of the knowledge or notice so imputed. This rule as to imputed knowledge of facts is in nowise inconsistent with the principle of law that to affect the title of a subpurchaser for the fraud of the original vendee, the former must be proved to have had actual knowledge of the fraud.

The case of *Knower* v. *Cadden Clothing Co.*, 57 Conn. 202, explained and distinguished.

Argued January 23d—decided February 21st, 1917.

ACTIONS of replevin for quantities of flour, brought to the Superior Court in Fairfield County and tried together to the jury before *Williams, J.;* verdict and judgment for the plaintiff in each case, and appeal by the defendant. *No error.*

These two cases were, by agreement, tried together in the court below and argued as one case in this court. The following facts do not seem to have been disputed:—

The plaintiff is a Minnesota corporation engaged in milling and selling flour, and the defendant, a Connecticut corporation located in Bridgeport, carries on a wholesale flour and feed business. In May, 1911,

the plaintiff made a contract with Soloway & Katz, wholesale grocers in New Haven, whereby it agreed to sell them flour on sixty days credit, the line of credit not to exceed $6,000 at any one time, to remain in force for one year, and thereafter to be subject to thirty days notice of cancellation by either party. This contract was based upon a written statement by Soloway & Katz of their financial condition as of April 11th, 1911. Late in the summer of 1911 Soloway & Katz became financially embarrassed. On October 18th their stock in trade was attached. On November 3d a receiver in bankruptcy was appointed, and subsequently Soloway & Katz were jointly and severally adjudicated bankrupts. At the time of the commencement of the first of these actions on October 28th, 1911, Soloway & Katz owed about $8,000 to the plaintiff for flour purchased under the above-mentioned contract. The larger part of this flour had been delivered to the defendant by Soloway & Katz between September 8th and October 25th on four months credit. The plaintiff replevied that part of the flour which still remained in the defendant's possession, claiming that the sales to Soloway & Katz were procured by false and fraudulent misrepresentations of their financial condition, and that Soloway & Katz did not intend to pay for the replevied flour when they ordered it; also that the defendant was either an active participant in the fraud, or had notice of such facts that it was not a bona fide purchaser.

The defendant denied all of these claims, and set up as an affirmative defense that the plaintiff, after bringing these actions, had affirmed the sales to Soloway & Katz by filing a claim in the bankruptcy court for the purchase price of the flour. The jury found for the plaintiff and returned interrogatories submitted to them, with their answers, as follows:—

1. Were Soloway & Katz guilty of fraud in procuring the flour in question in this case from the plaintiff? A. Yes.

2. Did the defendant obtain the flour in question in this case in absolute good faith and for value? A. No.

3. Did the plaintiff, after the commencement of this action, confirm or ratify the sale to Soloway & Katz of the flour in question? A. No.

Other material facts are referred to in the opinion.

*Robert E. DeForest,* for the appellant (defendant).

*Walter J. Walsh,* with whom was *William J. Mc-Kenna,* for the appellee (plaintiff).

BEACH, J. The defendants excepted to the admission in evidence of Exhibit A, the financial statement made by Soloway & Katz on April 11th, 1911, on the ground that it was not a continuing representation, and also claimed that the court erred in leaving it to the jury to say whether it was so intended. In this there was no error. The statement was not made for the purpose of a single sale. It was made to procure a continuing credit, and resulted in a written agreement by the plaintiff to give a line of credit for one year. Plaintiff claimed that about four months after the credit began to run, Soloway & Katz used it to obtain flour from the plaintiff after they were insolvent, and with the intent not to pay for it. The statement, which showed a considerable surplus, was admissible to prove the conditions under which the line of credit was originally given, and in connection with the claimed insolvency it was admissible as evidence of an intention to defraud the plaintiff, either by furnishing a false financial statement in April, 1911, or by concealing a subsequently developed insolvent condition while still

asking for and obtaining a line of credit based upon the original statement. The court correctly charged the jury in this connection that it was for them to say, in view of all the circumstances, whether Soloway & Katz did or did not intend Exhibit A as a continuing inducement to extend a continuing credit.

The bringing of these replevin suits amounted of itself to an election by the plaintiff to rescind the sale of the goods replevied; but the defendant, as a second defense, pleaded that the plaintiff had subsequently affirmed the sales to Soloway & Katz, by filing and proving in the bankruptcy court a claim for the price of the flour as goods sold and delivered. After it was shown that the original claim and amended claim filed by the plaintiff were lost, certain abbreviated entries in the records of the referee in bankruptcy were offered in evidence by the defendant to show that the plaintiff had filed a claim corresponding in amount to the indebtedness of Soloway & Katz. The plaintiff, to rebut the inference of affirmation, offered in evidence copies of the original claim and amended claim filed by it, marked Exhibits C and D, for the purpose of showing that the claim actually proved was not an unconditional claim. The copies were admissible for that purpose, notwithstanding that they were unsigned and that certain blank spaces in one of them were not filled out. The originals being lost, the plaintiff might, if necessary, have proved their entire contents by parol.

The next question is as to the effect of these exhibits on the defense of subsequent affirmance. It appears from Exhibit C, that the original proof of debt was for the entire indebtedness of Soloway & Katz, amounting to $8,434.60, accompanied by the statement that a replevin suit was then pending to recover a part of the goods, and that "credit will be given for the goods we may be able to recover on said suit." This left the

amount of claim entirely indefinite, and it appears from the imperfect copy of the amended claim, Exhibit D, that the original claim was disallowed on that account, and that as the result of a petition for review the plaintiff was ordered by the District Court to amend its proof of debt by alleging a certain definite amount of indebtedness. The original proof of debt was so amended by stating "that the value of the property replevied in said action amounts to $          , leaving a balance of $          due and owing to said The Bay State Milling Company as an unsecured claim against the above bankrupt estate, and for which amount said Bay State Milling Company makes claim against the said bankrupt estate." In the amended proof of claim as filed, the above blanks were properly filled out. The original proof of debt was also amended, among other particulars, by striking out the statement that the debt consisted of an account of six items maturing at different times. It thus appears that the plaintiff's claim as amended expressly disclaimed the value of the flour replevied in these actions, and claimed only the balance of the purchase price as a debt; also that it no longer expressly comprehends six items maturing at different times. Evidently the plaintiff is not occupying inconsistent positions with reference to any one barrel or package of flour.

Moreover, we cannot see that it is necessarily occupying inconsistent positions with respect to any one sale of flour to Soloway & Katz. While it is true that all the sales to Soloway & Katz were pursuant to the general terms of the contract, Exhibit B, yet each shipment was the result of a separate order, made at a separate time, and under the express terms of Exhibit B at a price to be separately agreed on. The plaintiff claims that four, and only four, separate shipments of flour were traced into the defendant's hands, one, of

two car loads, delivered by Soloway & Katz to the defendant on September 8th, and three others, of three car loads each, ordered by Soloway & Katz from the plaintiff on September 8th, September 15th and September 30th respectively; and that in all twelve hundred and seventy barrels of the plaintiff's flour were received by the defendant from Soloway & Katz between September 8th and October 25th, 1911, of which the plaintiff has replevied ten hundred and seventy-two barrels and a half, and the remaining one hundred and ninety-seven barrels and a half were re-sold by the defendant before these actions were commenced. It is apparent that for the purpose of electing whether to affirm or rescind them, the plaintiff ought to be allowed to treat these four sales to Soloway & Katz separately, because they were in point of fact separate agreements both in time and in the essential particular that the plaintiff might be able to prove a fraudulent intent not to pay in the case of one order, and not in the case of another.

The defendant has assumed in its claims and requests to charge that the debt proved by the amended claim includes some part of the purchase price of each of the four shipments of flour, and that thereby each and every one of the sales in question has been affirmed. That would have been apparently true of the original proof of claim, which claimed the whole price of all the flour and described it as an account of six items maturing at different times. But it is not necessarily true of the amended proof of claim, which describes the debt as a balance left after deducting the value of the flour replevied, and omits the statement that it consists of an account of several items maturing at different times.

Only 197½ barrels of flour received by the defendant have escaped these writs of replevin, and these may all have belonged to one of the four shipments, in

which case only one of the four sales resulting in the four shipments has, on the defendant's theory, been affirmed. It does not appear whether these 197½ belonged to more than one shipment; nor does it appear to what particular shipment or shipments they did belong; and therefore it does not appear how much of the replevied flour was included in the sale or sales which, on the defendant's theory, have been affirmed by the amended proof of debt. In other words, the defendant has not made good its second defense by proving its alleged affirmance as to all the sales, or as to any one sale in particular. It is, therefore, unnecessary to discuss the question of law which the defendant has argued,—whether in this State an action of replevin against the sub-vendee of a fraudulent bankrupt vendee is necessarily defeated by the plaintiff's subsequently proving in another jurisdiction and against a different defendant a claim for the price of goods not replevied, but included in the same sale as the replevied goods. The assignments of error relating to the defendant's second defense are overruled.

The remaining questions in the case relate to the finding of the jury that the defendant was not a purchaser in good faith and for value.

It is assigned as error that the court erred in admitting the testimony of one Menken, who said that he told one Ginsberg, then in apparent charge of the defendant's office, that Soloway & Katz were in failing circumstances. The objection is that Ginsberg was a mere bookkeeper and that there was no evidence that he was at the time of the alleged communication acting as manager of the defendant's business in any respect. The finding, however, recites that there was evidence tending to prove that Ginsberg was and acted as the bookkeeper and assistant manager of the defendant in the conduct of its business. This being so, the court

did not err in admitting the evidence, and in then charging the jury that it was a question of fact to be determined by them whether Ginsberg acquired any knowledge or notice of the insolvency of Soloway & Katz, and further, that if Ginsberg was not at the time acting for the defendant in acquiring or receiving the information and acting within the scope of his authority, then any knowledge or notice acquired or received by him could not bind or affect the defendant. *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 483, 35 Atl. 521.

The sixth and only other assignment of error which we deem it necessary to discuss relates to the following portion of the charge of the court: "It is claimed, as I have stated, that the defendant and its proper officers and agents, acting within the scope of their authority in the conduct of its business, had such knowledge and notice of the condition of Soloway & Katz as to put them upon inquiry.

"Knowledge on the part of the purchaser of goods from another of facts and circumstances which ought reasonably to excite suspicion and put one on inquiry is sufficient to charge him with notice of facts that he might have ascertained by the exercise of ordinary diligence.

"Whatever is sufficient to put a man on inquiry amounts to notice; that is, where one has sufficient information to lead him to the knowledge of a fact he should be deemed to be cognizant of such fact."

It is claimed that this instruction is inconsistent with the rule laid down in *Knower* v. *Cadden Clothing Co.*, (57 Conn. 202, 17 Atl. 580) to the effect that where the title of a sub-vendee is attacked because of the intent of the original vendee to defraud the plaintiff vendor, the latter is bound to prove as a fact that the sub-vendee had actual knowledge of the fraud. We

see nothing in the charge complained of inconsistent with the rule in *Knower* v. *Cadden Clothing Company.* The court was dealing in the first place with the rule as to imputed knowledge of facts, and not with the rule as to imputed knowledge of fraud. It referred to the insolvency of Soloway & Katz as a fact of which it was claimed that the defendant had sufficient knowledge to put it on inquiry, and then stated correctly the general rule as to imputed knowledge of facts. The court then went on and referred to some other alleged facts which were claimed to be within the defendant's knowledge, actual or imputed: that up to September 8th the defendant had never dealt in the plaintiff's brands of flour; that the defendant offered a large quantity of it for sale at less than the market price; that after the stock of Soloway & Katz had been attached under an alleged collusive attachment, large quantities of goods including some of the plaintiff's flour were removed in great haste from the store of Soloway & Katz, some of which were shipped to the defendant and some removed to the New Haven store of the president of the defendant corporation; that the terms of the alleged sale from Soloway & Katz to the defendant were unusual as to credit and price, in that Soloway & Katz, who received sixty days credit from the plaintiff, turned the bills of lading over to the defendant at no advance in price upon four months credit without interest. As to these and other facts of the same general character, the jury must have understood that they might impute knowledge to the defendant under the rule stated in the above quotation from the charge. This was the correct rule for that purpose. Then as to the cumulative effect of such knowledge of facts on the defendant's title, the court, with equal correctness, charged the jury as follows: "It is not enough to constitute a good title in the de-

fendant of the flour in question that it may appear that it paid full value for the flour. The defendant cannot sustain a title to the same unless it be found that in the purchase from Soloway & Katz the defendant acted in absolute good faith, that is, that it acted honestly in making the purchase." The court had already correctly charged the jury as to the burden of proof, and we think that the above statement of the rule for determining the validity of the defendant's title is correct and consistent with *Knower* v. *Cadden Clothing Co.*, 57 Conn. 202, 17 Atl. 580.

The ultimate question is whether the defendant acted honestly. For the purpose of determining that question, knowledge of any given fact may be imputed to the defendant under the rule laid down by the court, and the question of honest dealing is then to be determined as a fact in the light of the knowledge so imputed.

There is no error.

In this opinion the other judges concurred.